## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DENNIS HERRMANN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  05-3277 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner Dennis Herrmann's Motion to Set Aside, Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 1) (Petition).  Herrmann raises several challenges to his conviction and sentence.  For the reasons set forth below, the Court determines that an issue exists regarding whether Herrmann was denied effective assistance of counsel by his attorney's alleged refusal to file a notice of appeal at his direction.  The remaining challenges to his conviction and sentence lack merit and are denied.

## STATEMENT OF FACTS

On October 16, 2003, Greene County, Illinois, Deputy Sheriff Cale

Hoesman swore out an Application and Affidavit for a Warrant to search Herrmann's residence located at R.R.1 Box 53A, Hillview, Illinois. The Affidavit indicated that Herrmann and others had been manufacturing, or "cooking," methamphetamine in a shed behind his house. U.S. v. Herrmann, Docket No. 04-30014, Presentence Investigation Report (PSR) (Criminal d/e 46), ¶¶ 15-18. The Clerk is directed to file a copy of the PSR under seal in this case. The Warrant was issued.

Law enforcement officials executed the Warrant at Herrmann's residence on October 16, 2003. Herrmann's wife, Christy Herrmann, met the officers when they arrived at the residence. Officers found Petitioner Herrmann, James Carter and Nicholas Coates in a shed behind the residence. Aaron Herrmann, Deborah Sinks, Ron Mielke, Melissa Talkington, and an infant, Alexis Coates, were found inside the residence. Carter took a plastic bag out of his pants and gave it to the officers. Carter told the officers that the bag contained methamphetamine that he and the Petitioner had just finished making. The Illinois State Police Forensic Science Laboratory determined that the bag contained 13.9 grams of a mixture or substance containing methamphetamine. Carter led the officers to a tank buried in the ground which was used to dispose of the waste from

manufacturing methamphetamine. Id., ¶ 7.

The officers searched the property and found two SKS rifles. One of the rifles had a 20 round magazine attached. The officers also found a 30 round magazine with the rifles. Id., ¶ 8. The officers also found an additional 26.3 grams of a mixture or substance containing methamphetamine on the property. Id., ¶ 9. In the house, the officers found a Winchester Model 94, 30-30 gun, a New England Firearms .12 gauge shotgun, 46 rounds of 30-30 ammunition, 104 rounds of 12-gauge shotgun shells, and numerous other rounds of ammunition and shotgun shells. Id., ¶ 13. Throughout the property, the officers found drug paraphernalia, cannabis, and materials used to manufacture methamphetamine. Id., ¶¶ 9-12, 14.

The Drug Enforcement Agency (DEA) contracted with a company to remove from the property the hazardous waste left from methamphetamine manufacturing. The hazardous waste included ether, soil, camp fuel, sulfuric acid, waste water containing ammonium hydroxide, and empty cylinders that had been used to hold anhydrous ammonia. Id., ¶ 14.

On October 21, 2003, Herrmann was interviewed by law enforcement officers. Herrmann admitted cooking methamphetamine at his residence for

3

the last six months.  He said that he cooked methamphetamine two to three times a week during that six-month period.  He said that each cook produced about two ounces of methamphetamine.  <u>United States Response to Petitioner's Supplemental Motion to Vacate Set Aside or Correct a Sentence and Petitioner's Reply to United States' Response and Motion to Dismiss Petition (d/e 10) (Government Response)</u>, Exhibit 2, <u>Affidavit of Gregory Harris (Harris Affidavit)</u>, attached <u>Interview Report</u>.

On February 10, 2004, Herrmann was charged with manufacturing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1), and with possessing a firearm in furtherance of the drug trafficking crime in violation 18 U.S.C. § 924(c) (Count 2).  The Court found Herrmann to be indigent and appointed counsel for him.  On February 11, 2004, Herrmann signed a Letter Agreement with the Government under which the Government gave Herrmann a conditional grant of use immunity for any information he gave the Government after the date of the Agreement.  <u>Government Response</u>, Exhibit 4, <u>Cooperation Plea Agreement and Stipulation of Facts (Plea Agreement)</u>, attached <u>Cooperation and Conditional Grant of Immunity Letter (Cooperation Letter)</u>.

On April 1, 2004, Herrmann's counsel asked the Court to conduct a psychiatric examination of Herrmann to determine his competence. The Court allowed the request. Herrmann was then placed in the custody of the Federal Bureau Prisons (BOP) for the examination. A Forensic Report was issued by the BOP on June 30, 2004. Government Response, Exhibit 1, Forensic Report. The Forensic Report stated that Herrmann was competent to stand trial. The Forensic Report stated that Herrmann had an IQ of 82, "placing him in the below average to borderline range of intellectual functioning." Id., at 5. The Forensic Report also stated that Herrmann read at the fourth grade level. Id.

The Forensic Report stated that Herrmann was in the "borderline to extremely low range of memory functioning." Id. Herrmann, however, demonstrated "reasonable memory for past personal experiences, life events, and issues relating to his legal case." Id. The Forensic Report stated:

> [W]hen asked about key evidence in his own case, he was able to identify evidence against him, such as co-defendant statements, and his own report to police. He was also able to confront evidence against him that he had reason to believe did not apply to his legal case. . . . Mr. Herrmann demonstrated significantly improved reasoning and understanding when dealing with legal issues pertaining to his case. He also appeared to be more adept at discussing issues that he had first hand experience with, such as his discussions with his attorney, or

past court appearances.

<u>Id.</u>, at 6. The Forensic Report concluded that Herrmann had borderline intellectual functioning, but was competent to understand the nature of the legal proceedings and to assist his attorney in his defense. <u>Id.</u>, at 8-9.

On March 31, 2005, Herrmann signed a Plea Agreement with the Government. In the Plea Agreement, Herrmann agreed to waive his right to appeal as long as the sentence was "within the maximum provided in the statutes of conviction." <u>Plea Agreement</u>, ¶ 11. Herrmann also waived his right to file a § 2255 petition. <u>Id.</u>, ¶ 12. The parties estimated that Herrmann would probably have a base offense level of 30 under the United States Sentencing Guidelines (Guidelines). <u>Id.</u>, ¶ 14(c). The Government agreed: (1) that Herrmann was entitled to the reduction in his offense level for acceptance of responsibility, (2) to recommend a sentence at the low end of the Sentencing Guideline Range, and (3) to disclose to the Court the nature and extent of Herrmann's cooperation. <u>Id.</u>, ¶¶ 14, 21, 22. The Government also reserved the right to make a motion for a downward departure from Herrmann's Sentencing Range under the Guidelines, and any statutory minimum, if the Government determined that Herrmann provided substantial assistance. <u>Id.</u>, ¶ 16. <u>See</u> 18 U.S.C. § 3553(e),

U.S.S.G. § 5K1.1.

The Plea Agreement also contained a stipulation of the factual basis for Herrmann's guilty plea.  <u>Plea Agreement</u>, ¶ 23.  The parties stipulated that, when law enforcement officials executed the warrant on October 16, 2003, the Defendant and others had just manufactured at least 40.2 grams of methamphetamine in the shed behind Herrmann's residence.  The parties also stipulated that Herrmann was in the shed at the time the officers searched the property and that the two SKS semi-automatic rifles with ammunition were also in the shed at the time.  The stipulation also recited that Herrmann admitted in the October 21, 2003, interview that he had manufactured methamphetamine in the shed behind his residence at least two to three times a week for the preceding six months and that he produced at least 2 ounces of methamphetamine each time.  <u>Id.</u>

Herrmann then pleaded guilty to both charges on April 1, 2005.  <u>U.S. v. Herrmann, Docket No. 04-30014, Transcript of Proceedings on April 5, 2005 (Criminal d/e 50) (Transcript)</u>.  The Court directs the Clerk to file a copy of the Transcript of this case.

The United States Probation Office then prepared the PSR.  The PSR stated that Herrmann was responsible for 409.62 grams of a mixture or

substance containing methamphetamine.  PSR, ¶ 52.  This finding was based on the methamphetamine found on October 16, 2003, by law enforcement officials and on the statements of witnesses and co-defendants. Id., ¶¶ 7, 9, 29, 31, 40, 41, 42, 43, 44, 45.  As a result, Herrmann had a base offense level of 30.  Id., 67.  The PSR stated that Herrmann's statements, both before and after signing the cooperation agreement, were not used to determine the amount of methamphetamine for which he should be held accountable.  Id., ¶ 28.  The statements on which the Probation Office relied in determining Herrmann's base offense level were all taken by law enforcement officials before Herrmann signed the Cooperation Letter.  Id., ¶¶ 7, 9, 29, 31, 40, 41, 42, 43, 44, 45.

The PSR then stated that Herrmann's offense level should be increased by six levels because Herrmann created a danger of harm to a minor by manufacturing methamphetamine so close to his residence while a minor was in the residence.  Id., ¶ 70.  U.S.S.G.§ 2D1.1(b)(6)(C).  The PSR referenced several studies that showed that the chemicals used by methamphetamine production were toxic and dangerous to individuals, and particularly dangerous to children.  Id., ¶¶ 56-61.  The PSR then stated that the offense level should be reduced three levels for acceptance of

responsibility, resulting in a final offense level of 33.  <u>Id.</u>, ¶ 78.  The PSR

stated that Herrmann was in Criminal History Category IV.  <u>Id.</u>, ¶ 97.  As

a result, Herrmann's Guideline Sentencing Range was 188-235 months for

Count 1.  Count 2 carried a mandatory minimum sentence of 60 months to

be served consecutively; and so, Herrmann's effective Guideline Sentencing

Range was 248 to 295 months.

The sentencing hearing was held on August 5, 2005.  Herrmann

objected to the six-level enhancement for endangering a minor.  <u>Defendant's</u>

<u>Commentary on Sentencing Factors (Case No. 04-30014 d/e 43)</u>

<u>(Defendant's Commentary)</u>, ¶ 2.  The Clerk is directed to file a copy of the

Defendant's Commentary, with attachments, in this case.  The Court

overruled the objection and adopted the factual finding of the PSR.  <u>Minute</u>

<u>Entry entered August 5, 2005, in Case No. 04-30014</u>.  The Government

then moved for a downward departure from the Guidelines Sentencing

Range.  The Court allowed the motion and sentenced Herrmann to 160

months on Count 1 and 60 months on Count 2, to be served consecutively,

for a total sentence of 220 months.  <u>Id.</u>

After the sentencing hearing, Herrmann claims that he directed his

attorney to file a notice of appeal for him, but she did not do so.  <u>Petition</u>,

at 5.  He states that she told him that he could not appeal since he received a sentence that was less than 25 years. Id.

On November 7, 2005, Herrmann filed this § 2255 petition.  He raised four grounds for relief in the original Petition: (1) he was denied effective assistance of counsel when his counsel failed to file a notice of appeal after being advised to do so by Herrmann; (2) his sentence was improperly enhanced based on statements by out-of-court witnesses in violation of his confrontation rights under the Sixth Amendment; (3) his sentence was improperly based on elements that were not pled in the Indictment or proven beyond a reasonable doubt to a jury; and (4) his sentence was enhanced for endangering a minor in violation of his Sixth Amendment rights because the endangerment was not proven beyond a reasonable doubt. Id., at 5-6.  He then supplemented his Petition with four additional grounds for relief: (5) the Government breached the Plea Agreement regarding his § 5K.1.1 downward departure; (6) his immunized statements were improperly used as the factual basis for his guilty plea and as a basis for determining the relevant conduct for which he was held accountable at sentencing; (7) his counsel was ineffective for failing to request a Kastigar hearing to shield the use of his immunized statements

against him in violation of his Sixth Amendment rights; and (8) the waiver of his appeal rights in the Plea Agreement was not a knowing and voluntary waiver.  Supplemental Motion to Vacate, set Aside or Correct a Sentence, Pursuant to 22 U.S.C. 2255 (d/e 5) (Supplement).  In his replies, Herrmann raised two additional grounds: (9) his counsel was ineffective for failing to ask for a downward departure for diminished capacity pursuant to U.S.S.G. § 5K2.13; and (10) the Court improperly considered so-called expert evidence which did not meet the requirements for admissibility.  Petitioner's Reply to United States' Response and Motion to Dismiss Petition (d/e 7) (Reply), at 1; Petitioner's Reply to United States' Response and Supplemental Motion to Vacate, Set Aside or Correct a Sentence, Pursuant to 28 U.S.C. § 2255 (d/e 14) (Supplemental Reply), at 8-11.

## ANALYSIS

The Court must determine whether Herrmann waived his right to file this collateral attack under § 2255.  The Plea Agreement states that Herrmann:

> hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence.  The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code,

11

Section 2255.

Plea Agreement, ¶ 12.  Waivers of rights to collaterally attack a sentence under § 2255 are binding and enforceable if the terms are clear and unambiguous and the waiver was entered into knowingly and voluntarily. United States v. Sines, 303 F.3d 793, 798 (7th Cir. 2002); United States v. Jemison, 237 F.3d 911, 917 (7th Cir. 2001).  The scope of the waiver, however, is limited by its terms.  Sines, 303 F.3d at 798.  The Court has reviewed the Plea Agreement and the Transcript of the plea hearing and is convinced that the waivers were knowing and voluntary.  The § 2255 waiver, however, does not clearly address collateral attacks based on issues related to appeal.  The waiver, therefore, does not address the question of whether Herrmann's counsel was ineffective in refusing to file a notice of appeal.  The Court will, therefore, address this claim on the merits.

Herrmann argues that his waivers of his appeal rights in the Plea Agreement and § 2255 rights were not knowing and voluntary.  He relies on the Forensic Report as evidence to support this claim.  The Forensic Report does not support his claim.  The Forensic Report said that he had borderline intellectual abilities, but it also said that he was much more able to discuss matters within his personal experience and was able to discuss his case, the

12

evidence against him, and the legal issues raised in the case.  The Forensic Report does not indicate that he could not make a knowing and voluntary decision to enter into the Plea Agreement and waive his appeal rights.

Herrmann argues repeatedly that the Forensic Report said that he had the mind of a 9 year old.  That is wrong.  The Forensic Report said that he read at a fourth-grade level, not that his intellectual abilities were equivalent to a fourth-grader.  The Forensic Report does not support a finding that Herrmann did not knowingly and voluntarily enter into the Plea Agreement and the waivers therein.  Herrmann made a knowing and voluntary waiver. The waiver covers all issues he sought to raise in his collateral attack except whether his attorney was ineffective by allegedly refusing to file a notice of appeal at his request.

Even if the other issues he raised were not waived, Herrmann would only be entitled to an evidentiary hearing on the issue of whether his counsel failed to file a notice of appeal.  Absent the waiver, Herrmann needs to submit actual proof supporting his allegations before he would be entitled to an evidentiary hearing.  Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002).  In this case, Herrmann relies on his verified Petition, the PSR, and the Forensic Report.  This evidence only shows that a factual issue

13

exists regarding whether his counsel was ineffective for failing to file a notice of appeal.

1.    Notice of Appeal

To establish ineffective assistance of counsel, a defendant must show: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance resulted in prejudice to the defendant.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Generally, an attorney's performance falls below the objective standard of reasonableness if the defendant expressly directs the attorney to file a notice of appeal and the attorney fails to file the notice.  Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).   In such a circumstance, prejudice is usually presumed if the defendant can show that, but for counsel's failure to follow the defendant's instructions, a timely notice of appeal would have been filed.  Id., at 483-84.

In this case, however, Herrmann waived his right to appeal unless the sentence exceeded the statutory maximum.  The question, thus, is whether the attorney's refusal to follow her client's instructions to file a timely notice of appeal is ineffective under Flores-Ortega when the defendant has waived his appeal rights.  The Seventh Circuit has not addressed this issue, but

14

three other Circuits have considered the matter, and all concluded that the waiver did not change the attorney's obligation to file the notice of appeal. <u>Campusano v. United States</u>, 442 F.3d 770, 771-72 (2$^d$ Cir. 2006); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 790 (11th Cir. 2005); <u>United States v. Garrett</u>, 402 F.3d 1262, 1266 (10th Cir. 2005).  This Court agrees with those Courts of Appeals.  If the defendant instructed his attorney to file a notice of appeal, then her fiduciary duty to her client obligated her to file the notice even if the appeal may be futile and frivolous.  The correct way to address such a frivolous appeal is through a proper motion to withdraw at the appellate level.  <u>Circuit Rule</u> 51(b).  <u>See</u> <u>Anders v. California</u>, 386 U.S. 738 (1967).

In this case, Herrmann states under oath that he advised his attorney to file a notice of appeal, and she failed to do so.  <u>Petition</u>, at 5.  If this is so, he was denied effective assistance of counsel and is entitled to an out-of-time appeal.  The Government is directed to attempt to secure an Affidavit from Herrmann's counsel in the criminal proceeding setting forth her recollections of her conversations with Herrmann after the sentencing hearing regarding the issue of filing a notice of appeal.  Herrmann has already waived any claim of attorney client privilege regarding these

conversations by disclosing his recollection of these conversations.  The Court will review the Affidavit and determine whether an evidentiary hearing will be required.  If counsel declines to provide an Affidavit, the Court will conduct an evidentiary hearing on this matter.

    2.    <u>Confrontation at Sentencing</u>

Herrmann next argues that he was denied his right to confront his accusers because the Court relied on out-of-court statements at the sentencing hearing.  This argument is meritless.  A defendant has a Sixth Amendment right to confront his accusers at trial. <u>Crawford v. Washington</u>, 541 U.S. 36, 42 (2004).  Once convicted, a defendant does not have a confrontation right.  <u>United States v. Francis</u>, 39 F.3d 803, 810 (7th Cir. 1994).  Here, Herrmann waived his right to trial by pleading guilty.  Once he pleaded guilty, he was convicted of the crimes alleged and no longer had confrontation rights.  The Court, therefore, did not violate his confrontation rights by considering out-of-court statements as a basis for determining his sentence.

    3 & 4.    <u>*Apprendi* issues</u>

Herrmann argues in his third and fourth grounds that his sentence was improperly based on elements that were not alleged in his Indictment or

proven beyond a reasonable doubt to a jury.  All facts which increase the maximum sentence, other than the fact of a prior conviction, must be alleged in the Indictment and proven to the jury beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).  Here, Herrmann's Guideline Sentencing Range (offense conduct) was based on the quantity of drugs for which he was held accountable and the enhancement for endangerment of a minor during the manufacturing process.  The Indictment did not allege either the quantity of drugs or the endangerment of a minor, and these matters were not proven to a jury beyond a reasonable doubt.  Neither of these facts, however, changed the statutory maximum sentence that Herrmann was facing.  Based on the allegations in the Indictment, Herrmann was facing a statutory maximum sentence of 20 years in Count 1, plus a minimum 5-year consecutive sentence in Count 2. Herrmann's Guideline Sentencing Range for Count 1 was 188 to 235 months, below the 240 month statutory maximum.  Because the quantity of drugs and the endangerment did not raise the statutory maximum, those facts did not need to be alleged in the Indictment or proven beyond a

reasonable doubt.  <u>Talbott v. Indiana</u>, 226 F.3d 866, 868 (7th Cir. 2000).[1]

Herrmann's Sixth Amendment rights under <u>Apprendi</u> were not violated.

     5.    <u>Section 5K1.1 Motion</u>

Herrmann argues that the Government breached the spirit of its obligation to make a motion for a downward departure and to inform the Court of his assistance.  This argument is frivolous.  The Government made a motion for a downward departure, and Herrmann received a downward departure.  Herrmann seems to think that the departure was too small.  The Court decided the amount of the departure.  The Government met its obligation to make the motion.  Herrmann further argues that the Government failed to inform the Court fully about his assistance. Herrmann has failed to present any evidence to show that the Government's representation of his assistance was inaccurate.  He, therefore, has failed to make the required showing on this aspect of his claims.

---

[1]Petitioner cannot rely on <u>United States v. Booker</u>, 543 U.S. 220 (2005).  The Supreme Court in <u>Booker</u> interpreted the Guidelines so that they are advisory and so do not affect the maximum possible sentence for purposes of the Sixth Amendment. <u>Booker</u>, 543 U.S. at 264-65.

6.    Immunized Statements

Herrmann argues that his immunized statements were improperly used as the factual basis for his plea and in the factual basis for his sentence. The PSR clearly stated, however, that Herrmann's statements were not used to determine the quantity of drugs for which he was to be held accountable. PSR, ¶ 28.  The Probation Office relied on statements given by other individuals to calculate the drug quantities for which Herrmann was held accountable, and all of those statements were given before Herrmann signed the Cooperation Letter.  Id., ¶¶ 7, 9, 29, 31, 40, 41, 42, 43, 44, 45.  Those statements could not have been based on his subsequent immunized statements.

Herrmann argues that his statements were used to determine the proximity of the shed to the residence, which was relevant to the endangerment enhancement.  Officers were on the property during the search and saw the proximity of the shed to the house.  They did not need to rely on Herrmann's statements for this point, and there is nothing in the PSR that shows that the findings about endangerment were based on Herrmann's statements.  The determination of his Guideline Sentencing Range was not based on Herrmann's immunized statements.

The Plea Agreement recites that the factual basis of the plea was based, in part, on Herrmann's statements to officers on October 21, 2003. Herrmann, however, did not sign the Cooperation Letter until February 11, 2004.  Thus, his statements to officers in October 2003, were not covered by the conditional grant of immunity.  There was no violation of the grant of immunity.

7.   _Kastigar_ hearing

Once a defendant has been granted use immunity, the Government has the duty to demonstrate that the evidence used against him was derived from an independent, legitimate source and was not tainted by the immunized statements.  Kastigar v. United States, 406 U.S. 441, 460 (1972).  Herrmann argues that his counsel was ineffective because she did not ask the Court to force the Government to prove that the evidence against him was from an independent source.  The decision not to raise this issue met the standard of objective reasonableness.  The Plea Agreement clearly states that the factual basis for the plea was based on the events that occurred during the October 16, 2003, search of Herrmann's residence and on Herrmann's statements on October 21, 2003.  All of this evidence was secured months before Herrmann signed the Cooperation Letter and so was

independent of the grant of immunity.  The calculation of drug quantities in the PSR is based on statements of other people made before the Cooperation Letter was signed.  Again, this evidence was independent of the grant of immunity.  Herrmann's counsel, therefore, had no reason to raise the <u>Kastigar</u> issue.  Her decision not to do so met the objective standard of reasonableness.

  8. <u>Section 5K2.13 Downward Departure</u>

  Herrmann argues that his counsel was ineffective because she did not ask the Court for a downward departure for diminished capacity under Guideline § 5K2.13.  Section 5K2.13 states, in part, that:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.

U.S.S.G. § 5K2.13.  The Application Note states:

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrong.

<u>Id.</u>, <u>Application Note</u> 1.  Herrmann again relies on the Forensic Report as evidence that his attorney should have argued for a downward departure

under this section.

The Forensic Report does not provide evidence to indicate that either his attorney's decision not to seek a downward departure under § 5K2.13 was objectively unreasonable, or that he suffered any prejudice by that decision.  The Application Note, quoted above, requires evidence of one of three mental conditions: inability to understand the wrongfulness of conduct, inability to reason, or inability to control behavior.  Nothing in the Forensic Report indicated that Herrmann lacked the ability to understand the wrongfulness of his conduct or to control his behavior.  The Report concluded that Herrmann was in the borderline range of intellectual functioning, but did not indicate that he lacked the ability to reason.  Rather, the Forensic Report indicated that his major limitation was a memory limitation, not a reasoning limitation.  The Forensic Report, as quoted above, also stated that Herrmann understood his personal situation and the legal ramifications of that situation.  The Forensic Report does not supply evidence that Herrmann lacked the ability to reason.

Furthermore, the Forensic Report provides no evidence that Herrmann's intellectual limitations in any way contributed to Herrmann's decision to manufacture methamphetamine.  Section 5K2.13 only applies

if the diminished mental capacity contributed substantially to the defendant's commission of the crime.  Nothing in the Forensic Report indicates that Herrmann's limited mental abilities led him to acquire and mix ingredients to manufacture methamphetamine two to three times a week for months.  The Forensic Report does not support a § 5K2.13 downward departure.  Herrmann's counsel was not ineffective in deciding not to raise this issue.

        9.   <u>Expert Evidence</u>

Herrmann last argues that the Court improperly considered so-called "expert reports" that were not admissible under the Federal Rules of Evidence.  He also argues that consideration of the reports at sentencing violated his Sixth Amendment rights to confrontation.  Herrmann seems to be referring to the reports on which the Probation Office relied in applying the six-level enhancement for endangerment of a minor.  This argument is meritless.  The Rules of Evidence do not apply at sentencing.  The Court has broad discretion to consider hearsay and other evidence that would not be admissible at trial.  <u>United States v. Francis</u>, 39 F.3d at 809.  As explained above, the Confrontation Clause applies at trial, not sentencing.  <u>Id.</u>, at 810.  There was no error in the Court's consideration of such reports or the

adoption of the findings in the PSR based on such reports.  Herrmann has presented no basis for holding an evidentiary hearing to pursue this issue.

THEREFORE, the Court determines that Herrmann has made the necessary showing to entitle him to proceed further with one issue: whether his counsel was ineffective when she allegedly failed to file a timely notice of appeal after Herrmann instructed her to do so.  Herrmann has failed to present sufficient evidence to support any of his other claims.  The other claims are all dismissed.  The Clerk is directed to file copies of the following documents from Herrmann's criminal proceeding in this case: (1) Herrmann's PSR (Case No. 04-30014 d/e 46); (2) Herrmann's Commentary on Sentencing Factors (Case No. 04-30014 d/e 43); and (3) the Transcript (Case No. 04-30014 d/e 50).  The copy of the PSR is to be filed under seal.

The Government is directed to attempt to secure by January 15, 2007, an Affidavit from Herrmann's counsel in the criminal proceeding setting forth her recollections of her conversations with Herrmann after the sentencing hearing regarding the issue of filing a notice of appeal. Herrmann has already waived any claim of attorney client privilege regarding these conversations by disclosing his recollection of these

conversations.  The Court will review the Affidavit and determine whether an evidentiary hearing will be required.  If the Affidavit is not filed by January 15, 2007, the Court will set this matter for an evidentiary hearing.

IT IS THEREFORE SO ORDERED.

ENTER:   December 15, 2006.

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE